Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| WALDO O. MORALES GONZÁLEZ<br><br>Recurrido<br><br>v.<br><br>JAVI BOLT, INC. H/N/C LA CASA DE LOS TORNILLOS<br><br>Peticionario | KLCE202400805 | *Certiorari*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Lares<br><br>Sobre: Despido Injustificado (Ley 80) y otros<br><br>Caso Núm.:<br>CM2023CV00272 |
|---|---|---|

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Salgado Schwarz y el Juez Ronda Del Toro.

Rodríguez Casillas, juez ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 19 de diciembre de 2024.

Comparece ante nos Javi Bolt, Inc. h/n/c La Casa de los Tornillos ("Javi Bolt" o "peticionaria"), para que revoquemos la Resolución emitida el 8 de julio de 2024 por el Tribunal de Primera Instancia, Sala Superior de Lares ("TPI").[1] Allí, se declaró No Ha Lugar la Moción de Sentencia Sumaria; Suplementación a la Moción de Sentencia Sumaria y la Réplica presentadas por Javi Bolt.

Luego de examinar los argumentos de las partes, resolvemos expedir el auto de *certiorari* y revocar la *Resolución* recurrida. Veamos los fundamentos.

### -I-

El **11 de mayo de 2023**, el Sr. Waldo O. Morales González ("señor Morales González" o "recurrido") presentó una querella contra Javi Bolt sobre despido injustificado y salarios por hechos ocurridos durante los años 2019 al 2022.[2]

---

[1] Notificada el 9 de julio de 2024.
[2] Véase, Apéndice de la Peticionaria, Anejo 1, págs. 44-49.

Número Identificador
RES2024 _____

El **22 de mayo de 2023**, Javi Bolt compareció mediante Contestación a Querella y –*sin someterse a la jurisdicción del TPI*– invocó como defensa afirmativa la falta de parte indispensable. Arguyó que no fue el patrono del recurrido para el periodo en cuestión, sino que el patrono del señor Morales González era Arecibo Gas Depot, Inc. h/n/c Empresas de Soldaduras ("Arecibo Gas").[3]

Cónsono con lo anterior, el **21 de agosto de 2023** Javi Bolt presentó una *Moción de Sentencia Sumaria*.[4] En síntesis, arguyó que, aunque Javi Bolt y Empresas de Soldadura comparten la planta física en el establecimiento de La Casa de los Tornillos de Arecibo, ambos negocios operan independientemente. Por lo cual, su estructura corporativa es distinta a la de Arecibo Gas; la contabilidad de ambas empresas es distinta; la plantilla de empleados y uniformes de ambas empresas son distintos; ambos comercios atienden clientes separados; y, el mostrador de servicio y caja registradora de las empresas son independientes. Presentó el contrato de empleo firmado entre el patrono Arecibo Gas Depot, Inc., y el señor Morales González, por el cual el recurrido trabajó de manera ininterrumpida para Arecibo Gas desde el 22 de julio de 2017 hasta la fecha de su renuncia el 3 de noviembre de 2022. Además, presentó copia de los talonarios de pago por concepto de salarios (499R-W/2-2PR) que Arecibo Gas emitió a favor del señor Morales González durante el periodo en controversia. Para sustentar sus alegaciones, Javi Bolt anejó junto a su moción de sentencia sumaria los siguientes documentos:

Anejo 1 – Certificado de Incorporación Arecibo Gas.[5]

Anejo 2 – Declaración jurada de Carlos Víctor Galanes Rivera con fecha de 18 de agosto de 2023.[6]

Anejo 3 – Certificado de Incorporación de Javi Bolt.[7]

---

[3] Véase, Apéndice de la Peticionaria, Anejo 4, págs. 50-53.
[4] Véase, Apéndice de la Peticionaria, Anejo 2, págs. 17-22.
[5] Véase, Apéndice de la Peticionaria, Anejo 2, págs. 31-35.
[6] Véase, Apéndice de la Peticionaria, Anejo 2, págs. 23-25.
[7] Véase, Apéndice de la Peticionaria, Anejo 2, págs. 26-30.

Anejo 4 – Contrato de empleo.[8]

Anejo 5 – W2 de Waldo O. Morales González del 2019 al 2022.[9]

El **28 de noviembre de 2023**, Javi Bolt presentó una *Suplementación de Moción de Sentencia Sumaria.* Allí, —entre otros— suplementó su alegación de que el patrono del señor Morales González era Arecibo Gas, por lo cual destacó que en la parte superior izquierda de los talonarios del recurrido aparecen las siglas *ES* que representan a Arecibo Gas h/n/c Empresas de Soldaduras; evidenciando que los sistemas de finanzas, contabilidad, pago de nómina son separados e independientes entre ambas empresas.[10] En esta ocasión, Javi Bolt acompañó su escrito con los siguientes documentos:

Anejo 1 – Declaración jurada de Carlos Víctor Galanes Rivera con fecha de 28 de noviembre de 2023.[11]

Anejo 2 – Deposit Accounts Activity Summary.[12]

Anejo 3 – Talonarios 2019 al 2022 del Sr. Waldo O. Morales González.[13]

Tras varios tramites procesales, el **8 de marzo de 2024** el señor Morales González presentó su *Oposición a Solicitud de Sentencia Sumaria.* [14] En síntesis, alegó que existían hechos materiales en controversia porque, aunque Javi Bolt y Arecibo Gas son entidades corporativas distintas y separadas, en la practica operan como un solo patrono. En ese sentido, alegó que laboró desde el 2011 hasta el 3 de noviembre de 2022 para Javi Bolt, quien siempre pagó su salario y fue depositado en su cuenta en la cooperativa COOPACA bajo el nombre La Casa de los Tornillos. Además, adujo que nunca firmó un contrato de empleo con Arecibo

---

[8] Véase, Apéndice de la Peticionaria, Anejo 2, págs. 36-39.
[9] Véase, Apéndice de la Peticionaria, Anejo 2, págs. 40-43.
[10] Véase, Apéndice de la Peticionaria, Anejo 10, págs. 80-82.
[11] Véase, Apéndice de la Peticionaria, Anejo 10, págs. 83-84.
[12] Véase, Apéndice de la Peticionaria, Anejo 10, págs. 85.
[13] Véase, Apéndice de la Peticionaria, Anejo 10, págs. 86-194.
[14] Véase, Apéndice de la Peticionaria, Anejo 17, págs. 225-237.

Gas, por lo que su firma era falsa. Junto a su oposición, el señor

Morales González adjuntó lo siguientes documentos:

> Anejo 1– Declaración jurada de Waldo Morales González con fecha de 16 de noviembre de 2023.[15]

> Anejo 2 – Declaración jurada de Waldo Morales González con fecha de 8 de marzo de 2024.[16]

> Anejo 3 – Foto de la tienda La Casa de Los Tornillos y Empresas de Soldadura en Arecibo.[17]

> Anejo 4 – Informe Pericial de Evaristo Álvarez Ghigliotti con fecha del 5 de marzo de 2024.[18]

> Anejo 5 – Depósito de salarios de Waldo Morales González en cuenta de COOPACA.[19]

El **25 de marzo de 2024**, Javi Bolt presentó su _Réplica a "Oposición a solicitud de sentencia sumaria"_.[20] En este escrito, reafirmó lo expuesto en su _Moción de Sentencia Sumaria_. Además, señaló que los estados de cuenta de depósitos de COOPACA que el señor Morales González incluyó junto a su _Oposición_ no le fueron producidos durante el descubrimiento de prueba. Por lo cual, arguyó que dichos documentos no cumplían con las directrices emitidas por el TPI cuando les requirió que incluyeran los números de cuenta de los que provenían los depósitos de los salarios. No obstante —bajo declaración jurada de Carlos Galanes— adujo que

---

[15] Véase, Apéndice de la Peticionaria, Anejo 17, págs. 238-240.
[16] Véase, Apéndice de la Peticionaria, Anejo 17, págs. 241-244.
[17] Véase, Apéndice de la Peticionaria, Anejo 17, págs. 245.
[18] Véase, Apéndice de la Peticionaria, Anejo 17, págs. 246-263.
 Entre las múltiples controversias que se suscitaron en torno al descubrimiento de prueba, se encuentra la controversia sobre la firma del señor Morales González en el contrato de empleo del 22 de julio de 2017. El 27 de octubre de 2023, el recurrido le solicitó al TPI que permitiera a un perito caligrafista inspeccionar los contratos de empleo entre el señor Morales González y Empresas de Soldaduras. Esto es, el recurrido entendía que se falsificó al menos una de sus firmas.
 El TPI denegó la solicitud del señor Morales González mediante _Resolución_ del 30 de enero de 2024. En primer lugar, el foro de instancias no permitió al perito porque el descubrimiento de prueba autorizado era limitado a la controversia de si Javi Bolt era o no el patrono del recurrido. Segundo, la inspección solicitada por el señor Morales González no era cónsona con el procedimiento sumario que el propio recurrido invocó para tramitar su causa de acción.
 Mediante la Resolución recurrida, el TPI enfatizó que el informe pericial que no se consideró por el foro primario para resolver la solicitud de sentencia sumaria. Si embargo, no descartó la posibilidad de que se permita un perito caligrafo durante el descubrimiento de prueba entre las partes, en la eventualidad de que no se desestime la querellada.
[19] Véase, Apéndice de la Peticionaria, Anejo 17, págs. 264-278.
[20] Véase, Apéndice de la Peticionaria, Anejo 18, págs. 279-292.

en cuanto los depósitos de pago al recurrido en su cooperativa COOPACA, constituía un sistema de pago es típico de comerciantes que operan una pluralidad de corporaciones porque se facilita el pago a los empleados. En específico, explicó que luego de calcular el pago de nómina, Arecibo Gas —quien tiene su cuenta con First Bank— hace la transferencia de pago automática (ACH) a la cuenta global del Banco Popular de P.R., ("BPPR") en la que está designada La Casa de Los Tornillos, que mediante la plataforma Web Cash de BPPR los empleados de Arecibo Gas y otras corporaciones reciben sus pagos directos, por lo que en dichos depósitos de pagos se refleja "La Casa de Los Tornillos" como el nombre de la compañía que los emite. También, sostuvo que ningún hecho estaba en controversia y que el señor Morales González tampoco los controvirtió. A dicha moción, la peticionaria le anejó los siguientes documentos:

> Anejo 1 – Declaración jurada de Carlos Víctor Galanes Rivera con fecha de 22 de marzo de 2024.[21]

> Anejo 2 – Proceso de pago de nóminas a empleados de Arecibo Gas Depot, Inc.[22]

Por su parte, el **26 de abril de 2024** el señor Morales González presentó su *Dúplica sobre Réplica del Patrono y Reiterada Solicitud de No Ha lugar a la Sentencia Sumaria*.[23] En esencia, el recurrido reiteró que existían controversias sobre hechos materiales referente sobre quién era el patrón del recurrido. En esta ocasión, el señor Morales González adjuntó los siguientes documentos junto a su escrito:

> Anejo 1 – Declaración jurada de Carlos Víctor Galanes Rivera con fecha de 18 de agosto de 2023.[24]

> Anejo 2 – Declaración jurada de Carlos Víctor Galanes Rivera con fecha de 22 de marzo de 2024.[25]

---

[21] Véase, Apéndice de la Peticionaria, Anejo 18, págs. 293-295.
[22] Véase, Apéndice de la Peticionaria, Anejo 18, págs. 296-298.
[23] Véase, Apéndice de la Peticionaria, Anejo 19, págs. 299-302.
[24] Véase, Apéndice de la Peticionaria, Anejo 19, págs. 303-305.
[25] Véase, Apéndice de la Peticionaria, Anejo 19, págs. 306-308.

Examinados los planteamientos de ambas partes, el TPI emitió una *Resolución* el 8 de julio de 2024, donde formuló las siguientes determinaciones de hechos:[26]

1. Javi Bolt, Inc., es una corporación íntima con fines de lucro al amparo de la Ley General de Corporaciones de Puerto Rico. (Véase Anejo 3 de la entrada #11 SUMAC).
2. Javi Bolt, Inc., opera bajo el nombre comercial de La Casa de Los Tornillos en Arecibo, Puerto Rico. (Véase Anejo 3 de la entrada #11 de SUMAC y Anejo 1 de la entrada #56 SUMAC).
3. La Casa de Los Tornillos se dedica a la venta de equipo de ferretería industrial y regular como herramientas, tornillos, tuercas, arandelas, entre otros. (Véase Anejo 2 de la entrada #11 SUMAC).
4. Arecibo Gas Depot, Inc., es una corporación íntima con fines de lucro al amparo de la Ley General de Corporaciones de Puerto Rico. (Véase Anejo 1 de la entrada #11 SUMAC).
5. La dirección postal de Javi Bolt, Inc., y Arecibo Gas Depot, Inc., registrada en su respectivo Certificado de Incorporación es la misma para ambas corporaciones: P.O. Box 365047 San Juan, Puerto Rico. (Véase Anejo 1 y 3 de la entrada #11 de SUMAC).
6. El agente residente de Javi Bolt Inc., es Midel Gómez Mesa y el agente residente de Arecibo Gas Depot, Inc., es Midel G. Gómez Jorge, sin embargo, la dirección postal de ambos agentes residentes es la misma: P.O. Box 365047 San Juan, Puerto Rico 00936- 5047. (Véase Anejo 1 y 3 de la entrada #11 de SUMAC).
7. En el Certificado de Incorporación de Javi Bolt Inc., y de Arecibo Gas Depot, Inc., aparecen como suscribientes Midel A. Gómez Mesa y Midel G. Gómez Jorge.
8. Arecibo Gas Depot, Inc. opera bajo el nombre comercial de Empresas de Soldaduras en Arecibo. (Véase Anejo 3 de la entrada #11 de SUMAC y Anejo 1 de la entrada #56 SUMAC).
9. Arecibo Gas Depot, Inc., se dedica a la manufactura y venta de gases, equipos de seguridad y soldaduras. (Véase Anejo 2 de la entrada #11 SUMAC).
10. **Javi Bolt, Inc., y Arecibo Gas Depot, Inc., son entidades jurídicas distintas.**
11. El establecimiento donde opera Javi Bolt, Inc., y Arecibo Gas Depot, Inc., es compartido por ambas empresas. (Véase Anejo 2 de la entrada #11 SUMAC y Anejo 3 de la entrada #50 de SUMAC).
12. El señor Carlos Víctor Galanes Rivera es el Principal Oficial Financiero de Javi Bolt, Inc., y de Arecibo Gas Depot, Inc., desde el año 1998 y supervisa los Departamentos de Contabilidad y Finanzas, y Recursos Humanos de ambas empresas. (Véase Anejo 2 de la entrada #11 SUMAC).
13. El señor Galanes Rivera como parte de sus funciones administra las finanzas de ambas empresas y sus responsabilidades incluyen, pero no se limitan, al seguimiento del flujo de caja y la planificación financiera; el análisis de las fortalezas y debilidades financieras de las Empresas; y la toma de acciones correctivas por lo que realiza investigaciones y/o auditorías de los procesos de cobros en las tiendas. (Véase Anejo 2 de la entrada #11 SUMAC).

---

[26] Véase, Apéndice de la Peticionaria, Anejo 1, págs. 1-16.

14. También dentro las funciones del señor Galanes Rivera están el auditar las compras, desembolsos, ventas, operaciones y asuntos laborales de las tiendas como reclamaciones de horas trabajadas, nóminas y pago a los empleados. Es el custodio de los expedientes del personal de Javi Bolt, Inc., y de Arecibo Gas Depot, Inc. (Véase Anejo 2 de la entrada #11 SUMAC).

15. El señor Galanes Rivera está encargado de la contratación de empleados gerenciales y de impartirles instrucciones al personal gerencial. (Véase Anejo 2 de la entrada #11 SUMAC).

16. A su vez, supervisa indirectamente a los empleados de ambas empresas y tiene la facultad de amonestar y despedir a los empleados. (Véase Anejo 2 de la entrada #11 SUMAC).

17. Durante los años 2019 al 2022 Luis Alberro era el gerente de La Casa de Los Tornillos y de Empresas Soldaduras (Véase Anejo 2 de la entrada #50 de SUMAC).

18. **Los comprobantes de retención (Form 499R-2/W-2PR) para los años 2019 al 2022 establecen que Arecibo Gas Depot, Inc., con número de identificación patronal 66-061431, era el patrono del querellante Waldo O. Morales González**. (Véase Anejo 5 de la entrada #11 de SUMAC).

El TPI determinó que de la prueba documental ante su consideración surge que Javi Bolt y Arecibo Gas son corporaciones jurídicas independientes, que se dedican a la venta de productos y servicios distintos, aunque comparten el establecimiento donde operan ambas empresas. Por otro lado, el TPI reconoció que ambas empresas ofrecían productos distintos. De igual forma, el foro primario determinó que los comprobantes de retención (Form 499R-2/W-2PR) para los años 2019 al 2022 del señor Morales González demostraban que Arecibo Gas **era su patrono**.

No obstante, el TPI encontró controversia sobre si Javi Bolt y Arecibo Gas eran patronos distintos. Razonó que bajo la doctrina de un solo patrono se requiere un análisis caso a caso y que lo fundamental es *determinar si existe un control general de los asuntos críticos en los niveles de política laboral de las compañías.*

Ante este marco jurídico, el TPI encontró que durante el periodo en controversia, el Sr. Luis Alberro era el gerente de ambas compañías. También, destacó que el Sr. Carlos Víctor Galanes Rivera ("señor Galanes Rivera") funge como Principal Oficial Financiero de Javi Bolt y de Arecibo Gas desde el año 1998 y

supervisa los Departamentos de Contabilidad y Finanzas, y Recursos Humanos de ambas empresas. De igual forma, determinó que el señor Galanes Rivera es responsable en ambas empresas del seguimiento del flujo de caja y la planificación financiera; el análisis de las fortalezas y debilidades financieras de las empresas; la toma de acciones correctivas por lo que realiza investigaciones y/o auditorías de los procesos de cobros en las tiendas. De acuerdo con el TPI, el señor Galanes Rivera audita las compras, desembolsos, ventas, operaciones y asuntos laborales de ambas tiendas como reclamaciones de horas trabajadas, nóminas y pago a los empleados.

Por otro lado, el TPI encontró probado que el señor Galanes Rivera es el custodio de los expedientes del personal de Javi Bolt y Arecibo Gas. Igualmente, concluyó que de la prueba documental se desprende que el señor Galanes es el encargado de la contratación de empleados gerenciales y de impartir instrucciones al personal gerencial. Finalmente, encontró probado que el señor Galanes Rivera supervisa indirectamente a los empleados de ambas empresas y tiene la facultad de amonestar y despedir a los empleados.

Sobre el aspecto de la organización corporativa, el TPI encontró probado que la dirección postal de Javi Bolt y Arecibo Gas, que consta registrada en sus respectivos Certificado de Incorporación, es la misma para ambas corporaciones:

P.O. Box 365047<br>
San Juan, Puerto Rico

También, determinó que esta dirección es la misma para el agente residente de ambas corporaciones, aunque los agentes residentes son personas distintas. Además, en el Certificado de Incorporación de Javi Bolt y de Arecibo Gas aparecen como suscribientes Midel A. Gómez Mesa y Midel G. Gómez Jorge.

Por todo lo anterior, el TPI concluyó que existían controversias de hechos materiales sobre las operaciones, relaciones laborales, administración y propiedad de ambas empresas que hacían necesaria la celebración de una vista evidenciara. Así, encontró que solo así se podría determinar, si en la práctica, ambas empresas son o no son un solo patrono que responden solidariamente.

Cónsono con lo anterior, el TPI declaró No Ha Lugar la Moción de Sentencia Sumaria; la Suplementación a la Moción de Sentencia Sumaria; y, la Réplica presentada por Javi Bolt. Consecuentemente, señaló una vista evidenciaria para el 10 de septiembre de 2024 a las 9:00 a.m. mediante vídeo conferencia. De igual forma, el TPI les ordenó a las partes que presentaran una moción con la evidencia que utilizarían en la vista en o antes del 29 de agosto de 2024.

Inconforme, Javi Bolt acude ante esta Curia y nos plantea la comisión de los siguientes errores:

**PRIMER ERROR:**
Erró el Tribunal de Primera Instancia, Sala Superior de Lares, al no desestimar por falta de jurisdicción la Querella, a pesar de que hubo ausencia de parte indispensable

**SEGUNDO ERROR:**
Erró el Tribunal de Primera Instancia, Sala Superior de Lares, al declarar No Ha Lugar la Moción de Sentencia Sumaria presentada por la Peticionaria, bajo el fundamento de falta jurisdicción, debido a la omisión del Recurrido de acumular como querellada a Arecibo Gas Depot, Inc., parte indispensable en el pleito

**TERCER ERROR:**
Erró el Tribunal de Primera Instancia, Sala Superior de Lares, al declarar No Ha Lugar la Moción de Sentencia Sumaria presentada por la Peticionaria, pues de las propias determinaciones de hechos recogidas en la Resolución recurrida se desprendía su falta de jurisdicción, debido a la omisión del Recurrido de acumular como querellada a Arecibo Gas Depot, Inc., parte indispensable en el pleito

**CUARTO ERROR:**
Erró el Tribunal de Primera Instancia, Sala Superior de Lares, al declarar No Ha Lugar la Moción de Sentencia Sumaria presentada por la Peticionaria, a pesar de que el Recurrido no controvirtió los hechos esenciales y pertinentes de la referida moción y de su suplementación

Por su parte, el señor Morales González no compareció pese a que este foro revisor le brindó un término de 10 días para presentar su oposición. Así las cosas, damos por sometido el asunto.

## -II-

### A.

Sabido es que el auto de *certiorari* constituye *"un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior"*.[27] Con el fin de que podamos ejercer de una manera sabia nuestra facultad discrecional —de entender o no en los méritos de los asuntos que son planteados mediante este recurso— nuestros oficios se encuentran enmarcados en la Regla 40 del Reglamento del Tribunal de Apelaciones.[28]

En ese sentido, la referida Regla 40 del Tribunal de Apelaciones establece los criterios que debemos tomar en consideración para determinar la procedencia de la expedición de este recurso:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

### B.

La Regla 36 de Procedimiento Civil regula el mecanismo procesal de la sentencia sumaria, cuyo propósito principal es facilitar la solución justa, rápida y económica de casos civiles que no presentan controversias genuinas o reales sobre hechos

---

[27] *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009).
[28] 4 LPRA Ap. XXII-B, R. 40.

materiales y esenciales.[29] Se considera un hecho material esencial *"aquel que puede afectar el resultado de la reclamación de acuerdo al derecho sustantivo aplicable".[30]* Por lo tanto, procederá dictar una sentencia sumaria:

> [S]i las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia, demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que [,] como cuestión de derecho[,] el tribunal debe dictar sentencia sumaria a favor de la parte promovente.[31]

Es decir, este mecanismo podrá ser utilizado en situaciones en las que la celebración de una vista o del juicio en su fondo resultare innecesaria, debido a que el tribunal tiene ante su consideración todos los hechos necesarios y pertinentes para resolver la controversia y solo le resta aplicar el derecho.[32] De manera, que un asunto no debe ser resuelto por la vía sumaria cuando:

> **(1)** existen hechos materiales y esenciales controvertidos; **(2)** hayan alegaciones afirmativas en la demanda que no han sido refutadas; **(3)** surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material y esencial, o **(4)** como cuestión de derecho no procede. [33]

La precitada regla establece los requisitos de forma que debe satisfacer toda solicitud de sentencia sumaria.[34] El inciso (a) de la Regla 36.3 de Procedimiento Civil, dispone que la moción de la parte promovente deberá contener:

> **(1)** Una exposición breve de las alegaciones de las partes;
> **(2)** los asuntos litigiosos o en controversia;
> **(3)** la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;
> **(4)** una relación concisa y organizada en párrafos enumerados, de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se

---

[29] 32 LPRA Ap. V, R. 36.3 (e); *Bobé v. UBS Financial Services*, 198 DPR 6, 19 – 20 (2017).
[30] *S.L.G. Szendrey-Ramos v. Consejo de Titulares*, 184 DPR 133, 167 (2011).
[31] Regla 36.3 (e) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3 (e).
[32] *Burgos López et al. v. Condado Plaza*, 193 DPR 1, 17 – 18 (2015); *Mejías v. Carrasquillo*, 185 DPR 288, 299 (2012).
[33] *S.L.G. Szendrey-Ramos v. Consejo de Titulares*, *supra*, a la pág. 167. Énfasis nuestro.
[34] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 431 (2013).

establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

**(5)** las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y

**(6)** el remedio que debe ser concedido.[35]

Asimismo, presentada una moción de sentencia sumaria, la parte promovida no deberá cruzarse de brazos ni descansar exclusivamente en meras afirmaciones o en las aseveraciones contenidas en sus alegaciones.[36] Es preciso que la parte promovida formule —con prueba adecuada en derecho— una posición sustentada con contradeclaraciones juradas y contradocumentos que refuten los hechos presentados por el promovente.[37] Por consiguiente, cualquier duda que plantee sobre la existencia de hechos materiales en controversia no será suficiente para derrotar la procedencia de la solicitud.[38] Después de todo, *"[l]a etapa procesal para presentar prueba que controvierta los hechos propuestos por una parte en su Moción de Sentencia Sumaria no es en el juicio, sino al momento de presentar una Oposición a la Moción de Sentencia Sumaria, según lo exige la Regla 36 de Procedimiento Civil".[39]*

En ese sentido, la parte promovida también tiene la obligación de cumplir con las exigencias enunciadas en las cláusulas (1), (2) y (3) del inciso (a) de la Regla 36.3 de Procedimiento Civil.[40] Le corresponde citar con especificidad cada uno de los párrafos, según enumerados en la solicitud de sentencia sumaria, que entiende se encuentran en controversia, al igual aquellos que no.[41] Dicha tarea, deberá ser realizada de forma tan detallada y específica como lo haya hecho la parte promovente y haciendo referencia a la prueba admisible en la cual se sostiene la impugnación, con cita a la página

---

[35] 32 LPRA Ap. V, R. 36.3 (a). Énfasis nuestro.
[36] *Rodríguez Méndez v. Laser Eye*, 195 DPR 769, 785 (2016).
[37] *Ramos Pérez v. Univisión*, 178 DPR 200, 214 – 215 (2010).
[38] *Oriental Bank v. Perapi et al.*, 192 DPR 7, 26 (2014).
[39] *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 122 (2015).
[40] Regla 36.3 (b)(1) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3 (b)(1).
[41] *SLG Zapata-Rivera v. J.F. Montalvo, supra*, a la pág. 432.

o sección pertinente.[42] Ahora bien, la inobservancia de las partes con la normativa pautada tiene repercusiones diferentes para cada una. Al respecto, nuestro Tribunal Supremo ha señalado que:

> [P]or un lado, si quien promueve la moción incumple con los requisitos de forma, el tribunal no estará obligado a considerar su pedido. A contrario sensu, si la parte opositora no cumple con los requisitos, el tribunal puede dictar sentencia sumaria a favor de la parte promovente, si procede en derecho. Incluso, si la parte opositora se aparta de las directrices consignadas [en la regla] el tribunal podrá no tomar en consideración su intento de impugnación [de los hechos ofrecidos por el promovente].[43]

En ese mismo orden, nuestra jurisprudencia ha establecido que el deber de numeración no constituye un mero formalismo ni es un simple requerimiento mecánico sin sentido.[44] Este esquema le confiere potestad a los tribunales para excluir aquellos hechos propuestos que no hayan sido enumerados adecuadamente o que no hayan sido debidamente correlacionados con la prueba.[45]

Entretanto, es menester señalar que al ejercer nuestra función revisora sobre decisiones en las que se aprueba o deniega una solicitud de sentencia sumaria, nos encontramos en la misma posición que los foros de primera instancia.[46] Al tratarse de una revisión de *novo*, debemos ceñirnos a los mismos criterios y reglas que nuestro ordenamiento les impone a los foros de primera instancia, y debemos constatar que los escritos de las partes cumplan con los requisitos codificados en la Regla 36 de Procedimi*ento* Civil, *supra*.[47] A tenor con lo expuesto, el Tribunal Supremo insular ha pautado lo siguiente:

> [...] el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De haberlos, el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos. [...]

---

[42] *Íd.; Burgos López et al. v. Condado Plaza, supra*, a la pág. 17.
[43] *Meléndez González et al. v. M. Cuebas, supra*, a la pág. 111.
[44] *SLG Zapata-Rivera v. J.F. Montalvo, supra*, a la pág. 434.
[45] *SLG Zapata-Rivera v. J.F. Montalvo, supra*, a la pág. 433.
[46] *Meléndez González et al. v. M. Cuebas, supra*, a la pág. 118; *Vera v. Dr. Bravo*, 161 DPR 308 (2004).
[47] *Meléndez González et al. v. M. Cuebas, supra*, a la pág. 118.

[Por el contrario], de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar de novo si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.[48]

Desde luego, el alcance de nuestra función apelativa al intervenir en estos casos no comprenderá la consideración de prueba que no fue presentada ante el foro de primera instancia ni la adjudicación de hechos materiales en controversia.[49]

## C.

La Regla 10.2 de Procedimiento Civil, establece las defensas mediante las cuales una parte demandada puede solicitar la desestimación de la causa de acción que se insta en su contra. Esta regla dispone, en lo pertinente, que:

> *Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada:*
> *(1) falta de jurisdicción sobre la materia;*
> *(2) falta de jurisdicción sobre la persona;*
> *(3) insuficiencia del emplazamiento;*
> *(4) insuficiencia del diligenciamiento del emplazamiento;*
> *(5) dejar de exponer una reclamación que justifique la concesión de un remedio;*
> ***(6) dejar de acumular una parte indispensable.***
> *[…][50]*

Por su parte, la Regla 16.1 de Procedimiento Civil, dispone que la parte indispensable se trata de *"personas que tengan un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas, según corresponda".*[51]

Se ha precisado que el *"interés común"* al que hace referencia la Regla 16.1, *supra,* no es cualquier interés en el pleito, sino que tiene que ser real e inmediato y no puede tratarse de meras especulaciones o de un interés futuro que impida la confección de

---

[48] *Meléndez González et al. v. M. Cuebas, supra,* a las págs.,118-119.
[49] *Íd.* Énfasis nuestro.
[50] 32 LPRA Ap. V, R. 10.2.
[51] 32 LPRA Ap. V, R. 16.1.

un remedio adecuado porque podría afectar o destruir radicalmente los derechos de esa parte ausente.[52]

En acuerdo con lo anterior, la falta de parte indispensable en un pleito es un interés tan fundamental, que constituye una defensa irrenunciable que puede presentarse en cualquier momento durante el proceso.[53] Incluso, los foros apelativos, si así lo entienden, pueden y deben levantar *motu proprio* la falta de parte indispensable en un pleito, debido a que ésta incide sobre la jurisdicción del tribunal.[54]

## D.

La doctrina de un Solo Patrono es una de carácter jurisprudencial, desarrollada por los tribunales federales y la Junta de Relaciones del Trabajo Nacional. Su objetivo es no dejar desamparados a los empleados y evitar manipulaciones entre diferentes corporaciones que en realidad funcionan como un solo patrono.[55] Así, la doctrina de un solo patrono se utiliza generalmente cuando se trata de compañías que coexisten.[56] Bajo este precepto, los trabajadores pueden reclamar contra cualquiera de las corporaciones. Nuestro máximo foro ha expresado que esta doctrina aplica cuando dos o más patronos cumplen los siguientes criterios: **(1)** operaciones interrelacionadas; **(2)** control centralizado de las relaciones laborales; **(3)** administración común, **(4)** y propiedad común.[57] Resulta importante resaltar que para que la doctrina sea de aplicación, no es necesaria la concurrencia de todos los factores y ninguno es determinante.[58]

A los fines de hacer la determinación de si dos o más entidades se considerarán como un solo patrono, hay que hacer un análisis de

---

[52] *Ex Parte RPR & BJJ*, 207 DPR 389, 407 – 410 (2021).; *López García v. López García*, 200 DPR 50, 64 (2018).
[53] *Íd.* a la pág. 65.
[54] *Íd.*
[55] *JRT v. Asoc. C. Playa Azul* I, 117 DPR 20, 28 (1986).
[56] *Rodríguez v. Bco. Gub. de Fom. P.R.*, 151 DPR 383, 397 (2000).
[57] *JRT v. Asoc. C. Playa Azul* I, *supra, a la pág. 30*; *Odriozola v. S. Cosmetic Dist. Corp.*, 116 DPR 485, 496 (1985).
[58] *Íd.*

la totalidad de las circunstancias del caso. *Lo fundamental es determinar si existe control general de los asuntos críticos en los niveles de política laboral de las compañías.*[59] Bajo la doctrina de un solo patrono la determinación es objetiva, por lo que se examinan los cuatro criterios antes mencionados para determinar si existe el control general de los asuntos críticos en los niveles de política laboral necesario. [60] Sobre este particular, nuestro Tribunal Supremo ha señalado que el hecho de que dos compañías mantengan nóminas y cuentas bancarias separadas y celebren reuniones de juntas de directores distintas no desvirtúa la existencia de operaciones interrelacionadas.[61]

**-III-**

Javi Bolt acude ante nos y solicita la revocación de la Resolución del 8 de julio de 2024. En consecuencia, nos solicita que declaremos Ha Lugar su *Moción de Sentencia Sumaria* con el fin de desestimar la querella incoada en su contra. En síntesis, aduce que la querella debe desestimarse por falta de parte indispensable ya que Javi Bolt no es el patrono del recurrido, sino que el patrono es Arecibo Gas. Alega, además, que en el presente caso no aplica la doctrina de un solo patrono por tratarse de dos patronos distintos. Tiene razón.

A continuación, discutiremos de forma conjunta los señalamientos de error planteados por Javi Bolt.

**En primer orden**, estamos en la misma posición que el TPI ante la *Moción de Sentencia Sumaria*, por lo que procedemos a resolverla —no sin antes adoptar por referencia las dieciochos (18) determinaciones de hechos incontrovertidos que esbozó el foro primario en la *Resolución* recurrida— por entender que están

---

[59] *JRT v. Asoc. C. Playa Azul I, supra*, a las págs. 30-31.
[60] *Íd.*
[61] *JRT v. Asoc. C. Playa Azul I, supra*, a la pág. 28.

sustentados en la prueba que se acompañó en la solicitud.

**En segundo orden**, nos compete —como foro intermedio— determinar si las partes cumplieron con los requisitos que impone la referida Regla 36 de Procedimiento Civil. Un análisis de ambas solicitudes nos lleva a concluir que Javi Bolt y el señor Morales González cumplieron con todos los trámites procesales correspondientes sobre la sentencia sumaria. Ambas partes enumeraron los hechos esenciales y pertinentes, y sostuvieron sus alegaciones al unir junto con ellas declaraciones juradas y otros documentos admisibles en evidencia.

**En tercer orden**, surge del expediente y de la Resolución recurrida que Javi Bolt y Arecibo Gas son dos entidades jurídicas independientes, con su propio número patronal y sus propias cuentas bancarias. Aunque en los depósitos de pagos directo a las cuentas de los empleados de Arecibo Gas y otras corporaciones se hace constar que son emitidos por "La Casa de Los Tornillos", mediante la plataforma Web Cash de BPPR, quedó incontrovertido por medio de talonarios y formularios 499-R2 con núm. de identificación patronal 66-061431 que pagó los salarios del señor Morales González fue Arecibo Gas, no Javi Bolt. Esto es, el dinero con el que se pagó la nómina del señor Morales González provino de la cuenta de Arecibo Gas que está separada de la nómina de Javi Bolt.

Por otro lado, es inescapable el hecho de que Javi Bolt y Arecibo Gas operan desde el mismo establecimiento. Sin embargo, la determinación de hecho núm. 10 de la Resolución recurrida quedó probado que son entidades jurídicas distintas. En ese sentido, el recurrido no logró controvertir que las operaciones de ambas empresas son independientes la una de la otra. Ambos comercios cuentas con sus propias maquinas registradoras, cada uno cuenta con su propia plantilla de empleados los cuales pueden

ser fácilmente distinguibles porque cada negocio cuenta con su propio uniforme. Además, Javi Bolt se dedica a la venta de tornillos y otros artefactos análogos, mientras que Arecibo Gas se dedica a la venta de gas para soldar.

En definitiva, Javi Bolt y Arecibo Gas no son un solo patrono. De manera que, Javi Bolt no es el patrono del señor Morales González y no es parte en este pleito. De otro lado, Arecibo Gas, quien sí es el patrono del recurrido, no está presente en el pleito. Por lo tanto, el TPI carece de jurisdicción sobre la corporación Javi Bolt por no ser el patrono del recurrido. En consecuencia, en esta etapa del proceso hay falta de parte indispensable toda vez que el recurrido no incluyó como su patrono Arecibo Gas en la querella.

A tono con lo antes expuesto, erró el TPI al concluir que en este caso mediaron hechos materiales en controversia, y en su consecuencia, no disponer de la solicitud de sentencia sumaria a favor de Javi Bolt.

-**IV-**

Por los fundamentos antes expresados, expedimos el auto de *certiorari* solicitado, y **revocamos** la *Resolución* recurrida que denegó la moción de sentencia sumaria a favor de la peticionaria. En su lugar, dictamos *Sentencia Sumaria* a favor de la corporación Javi Bolt y desestimamos la reclamación presentada en su contra.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones